**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| NICHOLAS LEVI RIANTO, | ) |
| | ) |
| Petitioner, | ) CIV 11-00137 PHX FJM (MEA) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) |
| ERIC HOLDER, | ) |
| | ) |
| Respondent. | ) |

**TO THE HONORABLE FREDERICK J. MARTONE:**

Mr. Nicholas Rianto ("Petitioner"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on January 20, 2011. Respondent filed a Response in Opposition to Petition for Writ of Habeas Corpus ("Response") (Doc. 9) on April 19, 2011. Petitioner filed a reply (Doc. 10) to the response on April 29, 2011.

**I. Background**

Petitioner is a native and citizen of Indonesia. On June 1, 1999, the former Immigration and Naturalization Service (INS) admitted Petitioner to the United States as an immigrant. See Response, Exh. 1 & Exh. 2.

On September 9, 2002, Petitioner was convicted by the United States District Court, Eastern District of California, on two counts of unauthorized use of the identification of another person, in violation of 18 U.S.C. § 1028(a)(7), and two counts of mail fraud, in violation of 18 U.S.C. § 1341. Pursuant to each of these four convictions Petitioner was sentenced to concurrent terms of twelve months and one day imprisonment. See id., Exh. 3.

On January 11, 2006, Petitioner was convicted by the State of California of burglary in the second degree. Pursuant to this conviction Petitioner was sentenced to serve a term of sixteen months imprisonment. See id., Exh. 4. On May 30, 2007, Petitioner was convicted by the State of California of submitting a non-sufficient funds check and sentenced to two days imprisonment. See id., Exh. 5.

The Court notes that Petitioner was, therefore, convicted of four crimes involving fraud within five years of the date he was admitted to the United States. Petitioner was afterwards convicted of burglary and sentenced to a term of sixteen months imprisonment, from which he was released in 2007. Petitioner was thereafter convicted of kiting a check, a crime for which he served two days imprisonment. Petitioner was last released from incarceration in June of 2007, and was not thereafter in the custody of state or federal criminal authorities.

In 2010 Petitioner came to the attention of Immigration and Customs Enforcement ("ICE") when he applied for a replacement for his lost "green card." On October 14, 2010,

-2-

1  more than three years after Petitioner was released from
2  criminal custody, the Department of Homeland Security (DHS)
3  issued a Notice to Appear (NTA) charging Petitioner as removable
4  pursuant to section 237(a)(2)(A)(iii) of the Immigration and
5  Nationality Act (INA), codified at 8 U.S.C. §
6  1227(a)(2)(A)(iii), as an alien who was convicted of an
7  aggravated felony under INA section 101(a)(43)(F), i.e., a crime
8  of violence where a sentence of one year or more has been
9  imposed. See id., Exh. 6.  Petitioner was taken into custody
10 and ordered held without bond. See id., Exh. 7.

11        On November 8, 2010, the government withdrew the charge
12 regarding Petitioner having committed an aggravated felony, and
13 alleged additional allegations of criminal convictions.  The
14 government ultimately charged Petitioner with two new grounds of
15 removability under INA section 237(a)(2)(A)(i), codified at 8
16 U.S.C. § 1227(a)(2)(A)(i), i.e., that he had committed a crime
17 involving moral turpitude within five years of admission
18 (presumably the unauthorized use of another's identification and
19 mail fraud), and under INA section 237(a)(2)(A)(ii), 8 U.S.C. §
20 1227(a)(2)(A)(ii), i.e., that he had committed two crimes
21 involving moral turpitude not arising out of a single course of
22 conduct, i.e., mail fraud. See id., Exh. 8.

23        On November 10, 2010, Petitioner appeared before the
24 immigration judge (IJ) for his custody redetermination hearing.
25 The IJ denied the request for redetermination and both parties
26 waived appeal. See id., Exh. 9.  On February 3, 2010, the IJ
27 sustained the charges of removability and ordered Petitioner
28 removed to Indonesia. See id., Exh. 10 & Exh. 11.  Petitioner

-3-

filed an appeal to the Board of Immigration Appeals (BIA) on February 14, 2011. See id., Exh. 12. The appeal is pending.

In the section 2241 petition Petitioner asserts that 8 U.S.C. § 236 of the INA does not provide jurisdiction for his continued detention. Petitioner argues that Respondent contends his detention is authorized by In the matter of Saysan, 24 I&N 602 (2008). Petitioner asserts that the "when released" language found in section 236(c) belies the contention that this section authorizes his continued detention.

**II.  Analysis**

**A.  Applicable law**

The Court may issue a writ of habeas corpus to a Department of Homeland Security detainee who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (2006 & Supp. 2010).

Federal law provides authorization for the detention of removable aliens in two separate circumstances. Section 236(c) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226, governs the detention of aliens who are not under an administratively final order of removal. Respondents contend that Petitioner is being detained pursuant to section 1226(c), which requires the detention of some aliens pending the finality of their removal proceedings. The IJ agreed, concluding that he was without jurisdiction to release Petitioner on bond.

However, for the last several years the United States District Courts have consistently determined that section 1226(c) does not authorize the detention of an alien, pending the finality of their removal proceedings, when the alien is not

taken into ICE custody upon their release (or within a very brief period thereafter) from incarceration upon completion of the criminal sentence for the crime or crimes providing the basis for their removability.

> Section 1226(c) (emphasis added) provides:
>
> (c) Detention of criminal aliens
> (1) Custody
> The Attorney General shall take into custody any alien who--
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [FN1] to a term of imprisonment of at least 1 year, **or**
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> **when the alien is released**, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

As noted supra, Petitioner was released from custody for the crimes found as the basis for removability in 2003, seven years prior to being taken into custody as presumably authorized by section 1226(c).

The First Circuit Court of Appeals, interpreting the IRIRA,[1] and some District Courts, including courts considering

---

[1] Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, on September 30, 1996. The Act included transitional rules that were effective from October 9, 1996, to October 8, 1998, after which the permanent rule, codified at section 236, took effect. Congress used the same language pertaining to mandatory detention in the transitional rule as it does in the permanent rule. See IIRIRA §

the transitional rules applicable to pre-1998 immigrants, have found that, under the plain meaning of the statute quoted supra, mandatory detention does not apply to criminal aliens if they are not taken into immigration custody immediately after being released from state custody.[2] See Saysana v. Gillen, 590 F.3d 7, 10 (1st Cir. 2009) ("if the reference to 'when the alien is released' is read to encompass any release from any non-DHS custodial setting ... that phrase is completely disjointed from the text that precedes and follows it"); Monestime v. REilly, 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010); Khodr v. Adduci, 697 F. Supp. 2d 774, 779-80 (E.D. Mich. 2010); Scarlett v. DHS, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) (agreeing with the district courts that have held "the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges"); Garcia v. Shanahan, 615 F. Supp. 2d 175, 180-82 (S.D.N.Y. 2009) (holding that "the plain language of the statute ... manifests Congress' clear intent that there must be a nexus between the date of release and the removable offense"); Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) (holding that "the

---

303(b)(3), found at 8 U.S.C. § 1101 (notes).

[2] The language used in the transitional rule is exactly the same as that used in the permanent rule. See IIRIRA § 303(b)(3), found at 8 U.S.C. § 1101 (notes), and INA § 236(c). Thus, in accordance with the rules of statutory construction, the language in question should be interpreted in the same way. See K Mart Corp. v. Cartier Inc., 486 U.S. 281, 291, 108 S. Ct. 1811 (1988). That interpretation would follow the same logic as the Supreme Court's long-standing rule that identical words used in different parts of the statute must have the same meaning. See Sale v. Haitian Centers Council, Inc., 509 U.S. 155, 203 n.12, 113 S. Ct. 2549 (1993).

mandatory detention statute ... does not apply to an alien ... who has been taken into immigration custody well over a month after his release from state custody" for an offense enumerated within section 236(c)); Quezada-Bucio v. Ridge, 317 F. Supp. 2d 1221, 1228-30 (W.D. Wash. 2004) ("Thus, if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language 'after the alien is released, 'regardless of when the alien is released,' or other words to that effect. Instead, Congress chose the word 'when,' which connotes a much different meaning."); Alikhani v. Fasano, 70 F. Supp. 2d 1124 (S.D. Cal. 1999); Velasquez v. Reno, 37 F. Supp. 2d 663, 672 (D.N.J. 1999) (holding that the plain language of the statute provides that an alien is to be taken into custody at the time the alien is released); Pastor-Camarena v. Smith, 977 F. Supp. 1415, 1417-18 (W.D. Wash. 1997); Montero v. Cobb, 937 F. Supp. 88, 95 (D. Mass. 1996). These courts concluded Congress did not intend to subject those aliens who are released from custody and not immediately taken into immigration custody to mandatory detention under section 236(c), when they have been taken into immigration custody months or years after their release. These courts have found that Congress intended mandatory detention to apply only to those aliens taken into immigration custody immediately after their release from criminal custody. But see Sulayao v. Shanahan, No. 09-7347, 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009); Saucedo-Tellez v. Perryman, 55 F. Supp. 2d 882, 885 (N.D. Ill. 1999). The Court, however, is not bound by these two decisions and respectfully disagrees with the analysis

-7-

supporting those decisions.

Respondents contend that they have a strong interest in detaining Petitioner during the pendency of his removal proceedings. Respondents contend

> When Congress adopted 8 U.S.C. § 1226(c) in 1996, it recognized that immigration officials may not have sufficient personnel or adequate detention space immediately to effectuate the provision. As a result, Congress provided that the effective date could be delayed for up to two years:
> If the Attorney General, not later than 10 days after the date of the enactment of this Act, notifies in writing the Committees on the Judiciary of the House of Representatives and the Senate that there is insufficient detention space and Immigration and Naturalization Service personnel available to carry out section 236(c) [8 U.S.C. § 1226(c)]of the Immigration and Nationality Act, as amended by subsection (a), or the amendments made by section 440(c) of Public Law 104-132, the provisions in paragraph (3) [setting forth Transition Period Custody Rules] shall be in effect for a 1-year period beginning on the date of such notification, instead of such section or such amendments.
> The Attorney General may extend such 1-year period for an additional year if the Attorney General provides the same notice not later than 10 days before the end of the first 1-year period. After the end of such 1-year or 2-year periods, the provisions of such section 236(c) shall apply to individuals released after such periods.
>   Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 303(b)(2), Division C of Pub. Law 104-208, 110 Stat. 3009.

After quoting this legislative history, Respondent argues:

> During this time IIRIRA § 303(b)(3) applied, not Section 1226(c). The TPCR contained a provision identical to Section 1226(c)(1) requiring immigration officials to take custody of described criminal aliens

-8-

> upon "release." However, unlike the present Section 1226(c)(2), the TCPR provided for individualized bond determinations for aliens who could prove both legal entry into the United States and that they did not present a substantial risk of flight or threat to persons or property. See IIRIRA § 303(b)(3). This provision applied until its sunset in 1998.
>
> After the sunset of the TPCR, the government has taken the position that the term "when released," as used in 8 U.S.C. § 1226(c), refers to "release" from state criminal custody, irrespective of whether the custody occurred as a result of an offense listed in Section 1226(c). In re Matter of Kotliar, 24 I & N Dec. 124 (BIA 2007); Matter of West, 22 I & N Dec. 1405, 1409-10 (BIA 2000); In re Rojas, 23 I & N Dec. 117 (BIA 2001). Not all Courts have adopted the position of the government. However, in this case, this Court need not address the viability of the government's positions in these cases. Because Petitioner's convictions post-date the sunset of the TPCR and form the basis of the charges of removability, the issue does not apply to him.

Respondent argues Petitioner's detention pending the finality of his removal proceedings is required because "Petitioner's crimes involving moral turpitude create the sufficient nexus to justify his detention under 8 U.S.C. § 1226(c)(1) as the convictions occurred after 'Transition Period Custody Rule'(TPCR)," citing Ortiz v. Napolitano, 667 F. Supp 2d 1108, 1111 (D. Ariz. 2009).[3]

---

[3] This Court's de novo review of statute reveals that it clearly does not apply to individuals who were released from custody for a removable offense before the effective date of the mandatory detention provision. Although this statute was enacted on September 30, 1996, implementation of the mandatory detention provision was deferred for two years, until October 9, 1998. See Thomas v. Hogan, 2008 WL 4793739 at *1 (M.D. Pa. October 31, 2008) (discussing history of § 1226(c)). The two-year delay between passage of § 1226(c) and its enforcement suggests that Congress did not intend this statute to apply to offenses committed

-9-

The Court is not convinced by Respondent's argument. The crimes forming the basis for Petitioner's removability occurred in 2002, long after the expiration of the sunset provisions regarding section 1226(c). Additionally, Petitioner was not received into federal custody after the completion of state crimes, but instead was taken into federal custody more than three years after he completed his two-day sentence for the state crimes. Neither did Petitioner come to the attention of ICE because of any state criminal detention or accusation. Therefore, there is no "nexus" between Petitioner's 2002 crimes and his detention in 2010. The holding in Ortiz supports this conclusion:

> However, as the Magistrate Judge explained, every District Court that has considered this issue has found that the mandatory detention provision does not apply to individuals who were released from custody for the removable offense well before the effective date of the mandatory detention provision. See, e.g., Pastor-Camarena v. Smith, 977 F.Supp. 1415, 1417 (W.D.Wash.1997) (holding that "[t]he plain meaning of ['when the alien is released'] is that it applies immediately after release from incarceration, not to aliens released many year [sic] earlier."). The Government's Objection never squarely addresses the numerous district court cases cited by the Magistrate Judge and instead argues that this Court should defer to the interpretation of the Board of Immigration Appeals as applied in Matter of Saysana, 24 I. & N. Dec. 602, 2008 WL 3978211 (BIA Aug. 27, 2008)."

---

before October 9, 1998, the date of its enforcement. Ortiz v. Napolitano, 667 F. Supp. 2d 1108, 1111 (D. Ariz. 2009). Ortiz is not relevant to this case. The invidual in Ortiz was convicted of state crimes, committed in 1991 while the individual was paroled into the United States, and served his time and was released prior to the effective date of the mandatory detention provisions of the Immigration Reform and Immigrant Responsibility Act of 1996.

-10-

> In this case, the BIA considered whether the "release" from custody "must be directly tied to the basis for detention under [section 1226(c)]." However, under Chevron, the Court need not even reach the question of whether to defer to an agency's interpretation of a statute unless the statutory language is unclear. Here, this Court agrees with Magistrate Judge Anderson and the many other district courts which have considered this issue and concludes that the statute clearly requires a nexus between the deportable offense and the release from custody.
> Because of this required nexus, which did not exist here, the Court agrees with the Magistrate Judge's report and finds that Petitioner's Petition for Writ of Habeas Corpus should be granted.

Because there is no established "nexus" between Petitioner's 2002 and 2006 crimes and his alleged "mandatory" detention in 2010, the petition for habeas relief should be granted.

**IT IS THEREFORE RECOMMENDED that** Mr. Rianto's Petition for Writ of Habeas Corpus be **granted**.

**IT IS FURTHER RECOMMENDED that** the Court order that Respondent shall either release Petitioner from custody under an order of supervision, or provide a hearing to Petitioner, within 60 days of the filing of this Order, before an Immigration Judge with the power to grant him bail unless Respondent establishes that he is a flight risk or will be a danger to the community.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district

court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 25th day of May, 2011.

_____
Mark E. Aspey
United States Magistrate Judge

-12-